## FOR PUBLICATION

FILED & ENTERED

OCT 21 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jeanmari DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>Elaine Anne Villaverde and<br>Karen Susan Hight,<br><br>Debtors. | Case No. 6:15-bk-16988-SY<br><br>Chapter 13<br><br>**MEMORANDUM DECISION ON CHAPTER 13 TRUSTEE'S ORAL OBJECTION TO CONFIRMATION AND MOTION TO DISMISS** |

Before the court is the chapter 13[1] trustee's (the "Trustee") oral objection to confirmation of a chapter 13 plan and motion to dismiss the bankruptcy case filed by the debtors Elaine Villaverde and Karen Hight (the "Debtors"), a same-sex couple registered as domestic partners in California, on the grounds that the Debtors are not considered "spouses" eligible to file a joint petition under the Bankruptcy Code. For the reasons set forth below, the court agrees with the Trustee's eligibility argument and concludes that domestic partners cannot be considered "spouses" for bankruptcy purposes following the recent legalization of same-sex marriage in California and throughout the country.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

1. FACTUAL BACKGROUND.

The Debtors are two women in a same-sex relationship. In June 2004, they registered their domestic partnership with the California Secretary of State's Domestic Partners Registry. At that time, the state of California regrettably did not allow or recognize same-sex marriage. If it had been legal then, the Debtors acknowledged that they would have gotten married. They remain domestic partners today despite the re-legalization of same-sex marriage in California in 2013.[2]

On July 13, 2015, the Debtors filed a joint chapter 13 petition. At their confirmation hearing, the Trustee orally objected to the Debtors' plan and requested dismissal of their case, arguing that the Debtors were ineligible to file a joint petition due to their status as registered domestic partners. The court allowed the parties to file supplemental briefs on the issue and took the matter under submission on October 20, 2015.

2. JURISDICTION.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Bankruptcy Rules 7052 and 9014(c). The court has jurisdiction under 28 U.S.C. § 1334 and 11 U.S.C. §§ 302 and 1307, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[2] Same-sex marriage first became legal in California on June 16, 2008, following the California Supreme Court's decision in In re Marriage Cases, 43 Cal. 4th 757 (2008), which found the state's statutory ban on same-sex marriage to be unconstitutional.

However, legalization was short-lived and same-sex marriage was once again banned on November 5, 2008, after the passage of the Proposition 8 ballot initiative. Proposition 8 superseded the California Supreme Court's decision by adding a provision to the California Constitution defining marriage only as being between a man and a woman.

Subsequently, Proposition 8's ban on same-sex marriage was also found to be unconstitutional by a district court in Perry v. Schwarzenegger, 704 F. Supp. 2d 921 (N.D. Cal. 2010). That case eventually reached the U.S. Supreme Court in Hollingsworth v. Perry, 133 S. Ct. 2652 (2013), where the Court held that proponents of the ban had no standing to appeal the district court's ruling. In effect, the Court's decision left the lower court's ruling intact, allowing same-sex marriage to resume in California on June 28, 2013.

2

3.  DISCUSSION.

   3.1. **Introduction.**

On request of a party in interest, the court may dismiss a chapter 13 case or convert it to a chapter 7 case upon a finding of cause. See 11 U.S.C. § 1307(c). Such "cause" may include a debtor's failure to meet eligibility requirements. See Smith v. Rojas (In re Smith), 435 B.R. 637, 649 (B.A.P. 9th Cir. 2010) (affirming dismissal of chapter 13 case due to debtors exceeding the § 109(e) debt limits).

The eligibility issue in this case arises under § 302 of the Bankruptcy Code, which states that "[a] joint case . . . is commenced by the filing with the bankruptcy court of a single petition . . . by an <u>individual that may be a debtor</u> . . . and <u>such individual's spouse</u>." 11 U.S.C. § 302(a) (emphasis added). The dispute here is whether "an individual . . . and such individual's spouse" include an individual debtor and his or her domestic partner whose domestic partnership is registered in California. In other words, are domestic partners considered "spouses" for purposes of § 302?

   3.2. **Defining the Term "Spouse."**

In addition to § 302, the term "spouse" appears in several other provisions of the Bankruptcy Code. See, e.g., id. § 101(14A) (defining "domestic support obligation" as alimony, maintenance, or support debt owed to a "spouse" or "former spouse"); id. § 523(a)(15) (excepting from discharge a property settlement debt owed to a "spouse" or "former spouse"), id. § 541(a)(2) (defining estate property to include "[a]ll interests of the debtor and the debtor's spouse in community property"). However, there is no definition for the term found in the Code itself.

     3.2.1. <u>DOMA's Definition of "Spouse."</u>

From 1996 until 2013, the Defense of Marriage Act ("DOMA") provided the controlling definitions of "marriage" and "spouse" for all federal law purposes. See Pub. L. No. 104-199, § 3(a), 110 Stat. 2419, 2419 (1996) (codified at 1 U.S.C. § 7). The term "marriage" meant "only a legal union between one man and one woman as

3

husband and wife," while the term "spouse" "refer[red] only to a person of the opposite sex who is a husband or a wife." Id.

Applying DOMA's restrictive definition of "spouse" in the bankruptcy context, at least one court has dismissed a joint petition filed by a married same-sex couple because they were not spouses. See In re Kandu, 315 B.R. 123, 148 (Bankr. W.D. Wash. 2004). Yet, other bankruptcy courts have declined to dismiss joint petitions filed by married same-sex couples, see, e.g., In re Somers, 448 B.R. 677, 682–84 (Bankr. S.D.N.Y. 2011), with one bankruptcy court even ruling that DOMA was unconstitutional. See In re Balas, 449 B.R. 567, 578–80 (Bankr. C.D. Cal. 2011).

In 2013, the issue of DOMA's constitutionality reached the Supreme Court in the case of United States v. Windsor, 133 S. Ct. 2675 (2013). There, the Supreme Court held that DOMA was unconstitutional for depriving the equal liberty of persons protected by the Fifth Amendment and struck down DOMA's definitions for "marriage" and "spouse." See id. at 2695–96. Following Windsor, there no longer remains a federal statute specifically defining "spouse."

3.2.2. Ordinary Meaning of "Spouse."

Without a controlling statutory definition, the court must look for the ordinary meaning of "spouse" by turning to dictionaries and similar sources. See Kenneth H. Klee & Whitman L. Holt, Bankruptcy and the Supreme Court: 1801–2014, at 20 (2015) (citing Clark v. Rameker, 134 S. Ct. 2242, 2246 (2014); Hall v. United States, 132 S. Ct. 1882, 1887 (2012); Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 69 (2011); Hamilton v. Lanning, 560 U.S. 505, 513–14 (2010)).

One dictionary defines the term to mean "[o]ne's husband or wife by lawful marriage; a married person." Black's Law Dictionary 1621 (10th ed. 2014). Another describes "spouse" as "[a] marriage partner; a husband or wife." American Heritage Dictionary of the English Language 1694 (5th ed. 2011). And another dictionary similarly defines it as a "married person: husband, wife." Merriam-Webster's Collegiate Dictionary 1138 (10th ed. 1994).

4

The common thread among these dictionary definitions is that a "spouse" must be an individual who is married to another or who is considered to be another's husband or wife (regardless of either individual's sex or gender). Thus, for purposes of 11 U.S.C. § 302, it appears that a "spouse" must be a married individual.[3]

Having clarified the meaning of "spouse," the issue now becomes whether a domestic partner registered in California is considered to be a husband, a wife, or otherwise a married individual. To resolve this issue, the court must turn to California law to understand the status of domestic partners.

### 3.3. Determining Whether a Domestic Partner Is a "Spouse."

#### 3.3.1. Background of Domestic Partnerships under California Law.

In California, domestic partnerships are governed by Division 2.5 of the California Family Code, sections 297–299.6, with the most significant legislation being the California Domestic Partner Rights and Responsibilities Act of 2003, 2003 Cal. Legis. Serv. ch. 421 (A.B. 205) (West). Under California law, "domestic partners" are defined as "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring." Cal. Fam. Code § 297(a). Same-sex couples, as well as some opposite-sex couples, may register as domestic partners if they meet certain statutory requirements. See id. § 297(b)(1)–(5).

Once a couple properly registers their domestic partnership with the California Secretary of State, California law treats them as if they were spouses, providing that

> [r]egistered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses.

---

[3] This plain meaning definition is even consistent with DOMA once the offending statutory language is stricken. See 1 U.S.C. § 7 (defining "spouse" as "a person ~~of the opposite sex~~ who is a husband or a wife" (strikethrough added) (emphasis added)).

5

Id. § 297.5(a); see also id. § 297.5(b)–(k). Despite the law treating those in a domestic partnership similarly to those in a marriage, there are still differences (albeit relatively minor ones) between the two types of unions, such as the prerequisites and method for forming a domestic partnership. See Knight v. Superior Court, 128 Cal. App. 4th 14, 30–31 (2005) (outlining differences between marriages and domestic partnerships). Nevertheless, the purpose of California's domestic partnership legislation has been "to create substantial legal equality between domestic partners and spouses." Koebke v. Bernardo Heights Country Club, 36 Cal. 4th 824, 845 (2005).

### 3.3.2. California Law's Treatment vs. Classification of Domestic Partners.

The Debtors argue that since California law grants domestic partners the same rights as spouses, domestic partners should be deemed "spouses" who have the right to file a joint petition under 11 U.S.C. § 302.[4] Although California law does treat domestic partners similarly to spouses, the law nevertheless fails to classify domestic partners as spouses or married partners.

California law does not view domestic partnership and marriage as one and the same. As one court noted, with the enactment of domestic partnership legislation, "the [California] Legislature has not created a 'marriage' by another name or granted domestic partners a status equivalent to married spouses." Knight, 128 Cal. App. 4th at 30. Although the legislation was intended to create "substantial legal equality between domestic partners and spouses," Koebke, 36 Cal. 4th at 845 (emphasis added), substantial legal equality is nevertheless not complete legal equality.

While California Family Code section 297.5 offers the same rights to domestic partners as spouses, the language of other provisions of the California Family Code nevertheless reinforces the point that domestic partners and spouses, or domestic partnerships and marriages, are distinguishable concepts. For instance, one

---

[4] Although the Debtors wish the court to rule that they, as domestic partners, are permitted to file a joint petition, they oddly state later in their supplemental brief that the court's ruling "need not open the door to every domestic partnership" or provide for "a blanket authorization for any [registered domestic partnership] to file" a joint petition.

6

provision states that "[a] legal union of two persons of the same sex, other than a marriage, that was validly formed in another jurisdiction, and that is substantially equivalent to a domestic partnership . . . , shall be recognized as a valid domestic partnership in this state." Cal. Fam. Code § 299.2 (emphasis added). And another provision states, "A reference to 'husband' and 'wife,' 'spouses,' or 'married persons,' or a comparable term, includes persons who are lawfully married to each other . . . ." Id. § 11. Noticeably absent from the list of similar terms in this provision is the term "domestic partner."

As discussed by the district court in Perry v. Schwarzenegger, it is clear that "California [law] has created two separate and parallel institutions," with marriage being considered the "culturally superior status compared to a domestic partnership." 704 F. Supp. 2d 921, 994 (N.D. Cal. 2010) (finding that California's creation of domestic partnerships failed to satisfy same-sex couples' fundamental right to marry under Due Process Clause). Domestic partnerships "do not provide the same social meaning as marriage," and they "were created specifically so that California could offer same-sex couples rights and benefits while explicitly withholding marriage from same-sex couples." Id. Simply stated, "[a] domestic partnership is not a marriage," Id. Therefore, a domestic partner is not a "spouse."

Following the Supreme Court's ruling in Hollingsworth v. Perry, 133 S. Ct. 2652 (2013), and the re-legalization of same-sex marriage in California in 2013,[5] the status of domestic partners has not changed. Even though the California Legislature passed same-sex-marriage-related legislation after the outcome of Hollingsworth, see Act of July 7, 2014, 2014 Cal. Legis. Serv. ch. 82 (S.B. 1306) (West), the Legislature, for whatever reason, decided not to elevate the status of domestic partners. It appears that a domestic partnership, unfortunately, remains an "inferior institution" in California. Perry, 704 F. Supp. 2d at 994.

---

[5] See supra note 2.

7

As much as the California Legislature attempted to grant domestic partners the same rights as spouses, its intent was not to grant domestic partners the same status as spouses. Cf. In re Marriage Cases, 43 Cal. 4th 757, 804 (2008) (dicta) (noting that proponents of the 2003 domestic partnership legislation may "not [have] "view[ed] the enactment as the final or ultimate legislative step with regard to the official status available to same-sex couples"), superseded on other grounds by constitutional amendment, Cal. Const. art. I, § 7.5, invalidated by Perry, 704 F. Supp. 2d 921. As a result, when looking at how California law classifies domestic partnerships, the only conclusion that the court can reach is that a domestic partner is not considered to be a "spouse."

### 3.3.3. The Availability of Same-Sex Marriage to the Debtors.

In determining whether a domestic partner qualifies as a "spouse," the court also finds it necessary to consider the recent development made in the institution of marriage and the progression of rights available to same-sex couples. As the Debtors have argued, "[t]his case should not be analyzed outside of its historical context." Taking into account this context, however, still does not change the outcome for the Debtors.

Here, considering the relevant historical context specifically means looking at the product of two recent Supreme Court decisions. As previously mentioned, in 2013, following the Court's ruling in Hollingsworth, 133 S. Ct. 2652, same-sex couples in California can, once again, get married. And earlier this year, following the ruling in Obergefell v. Hodges, 135 S. Ct. 2584 (2015), same-sex couples effectively have the right to get married in any state throughout the United States. Now that same-sex marriage, like opposite-sex marriage, is available nationwide, there no longer remains a legal obstacle blocking two otherwise eligible individuals (regardless of either's sex or gender) from getting married and becoming each other's spouses. It follows that a same-sex couple also has the same, equal right as an

///

opposite-sex couple to file a joint petition under 11 U.S.C. § 302 as long as the couple is married.

Because both same- and opposite-sex couples can get married and, as a result, file a joint petition, denying same-sex domestic partners the ability to jointly file is no different than denying an unmarried, cohabitating opposite-sex couple the same. Like married couples, two unmarried, cohabitating debtors may be jointly liable for their debts and may jointly hold their property, but such debtors are still not "spouses" eligible to file a joint petition. See In re Malone, 50 B.R. 2, 3 (Bankr. E.D. Mich. 1985); In re Coles, 14 B.R. 5, 5 (Bankr. E.D. Pa. 1981); see also In re Lucero, 408 B.R. 348, 350 (Bankr. C.D. Cal. 2009). Since the unmarried, cohabitating opposite-sex couple has the opportunity to get married but chooses not to, it is not inappropriate to deny that couple the ability to file jointly. It was their choice not to become spouses. Now that marriage has become available to same-sex couples, it is similarly appropriate to deny an unmarried same-sex couple the ability to file jointly (whether or not they are in a domestic partnership).

The Debtors argue that denying domestic partners the ability to jointly file constitutes discrimination by "requir[ing] those who were required to wear a badge of inferiority . . . to now be told that they are still second class citizens." But it is disingenuous to characterize the Debtors today as being "<u>required</u> to wear a badge of inferiority" by way of their domestic partnership.

The Debtors had no option other than domestic partnership in 2004, but, as of June 28, 2013, they have gained the additional option of getting married. Yet, more than two years after same-sex marriage became legal again in California, the Debtors, for reasons unknown, have chosen to stay in a domestic partnership. The Debtors have essentially elected to continue wearing California's badge of inferiority when they can easily rip that badge off by getting married. The Debtors' argument that denying same-sex domestic partners the right to jointly file amounts to treating them as second-class citizens would have carried greater weight prior to the

legalization of same-sex marriage, but it no longer carries any weight in today's landscape where marriage has become widely available to same-sex couples. In fact, allowing same-sex domestic partners to file a joint petition when opposite-sex domestic partners are not allowed to do so would create an inequality and discrimination based on the debtors' sexual orientation. The way to stop discrimination on the basis of sexual orientation is to stop discriminating on the basis of sexual orientation. Cf. Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 748 (2007).

For these reasons, domestic partners cannot be considered "spouses" under the Bankruptcy Code. As a result, the Debtors, who are domestic partners under California law, are not eligible to file a joint petition under 11 U.S.C. § 302(a).

### 3.4. Dismissing the Joint Debtor.

Although the Debtors are not entitled to file jointly, their case does not need to be dismissed entirely. At both the initial confirmation hearing and the continued hearing, the court discussed with the Debtors' counsel and the Trustee the options available in the event the court rules that the Debtors cannot proceed as joint debtors in this case. The options are: dismissing the case in its entirety; severing the joint petition and treating the Debtors as having file two separate cases; or dismissing the joint debtor, Karen Hight. At the conclusion of the continued hearing, both the Debtors' counsel and the Trustee recommended that only the joint debtor be dismissed from the case and that the case be allowed to proceed as to the debtor, Elaine Villaverde. The court accepts the recommendations of the Debtors and the Trustee and will dismiss only the joint debtor, Karen Hight, from the case. The debtor, Elaine Villaverde, may proceed with the case on her own and seek to confirm her chapter 13 plan.

4. CONCLUSION.

The court holds that a same-sex couple in a registered domestic partnership under California law are not "spouses" for purposes of § 302(a) of the Bankruptcy

1 | Code. Because the Debtors, as domestic partners, are not eligible to file a joint
2 | petition, Karen Hight will be dismissed from the case. Elaine Villaverde shall
3 | proceed with the case as the sole debtor.
4 |     The court will enter an order consistent with this memorandum decision.
5 | ###

Date: October 21, 2015

Scott H. Yun
United States Bankruptcy Judge